## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO.

_____
                                                )
**ELIZABETH M. TAMPOSI**                        )
                                                )
            **Plaintiff**                       )
**vs.**                                         )
                                                )
**STEPHANIE DENBY, ESQ.; BURKE WARREN**         )
**MACKAY & SERRITELLA, P.C. ; MICHAEL**         )
**WEISMAN, ESQ.; REBECCA MCINTYRE, ESQ.;**      )
**WEISMAN & MCINTYRE, P.C.; JULIE SHELTON,**    )
**ESQ.** individually and in her capacities as Trustee of the )
Elizabeth M.  Tamposi GST Exempt Trust and the  )
 Elizabeth M. Tamposi Trust, both created under the )
Samuel A. Tamposi Sr. 1992 Trust, and in her capacity as )
Trustee of the Elizabeth M. Tamposi Trust, created under )
the Samuel A. Tamposi Sr. 1994 Irrevocable Trust; )
**BUTLER, RUBIN SALTARELLI & BOYD, LLP**; and )
**BAKER & DANIELS LLP**                         )
                                                )
            **Defendants**                      )
_____)

### VERIFIED COMPLAINT
### <u>Statement of the Case</u>

        This is an action for legal malpractice, conflict of interest, breach of fiduciary duty,

aiding and abetting breach of fiduciary duty and unjust enrichment against defendant lawyers

and their law firms for directly and vicariously rendering substandard advice and services to the

plaintiff, Elizabeth M. (Betty) Tamposi, that proximately caused the forfeiture of all of her

interests in various family trusts, with an estimated  present value of more than $20,000,000, and

proximately caused her to suffer a judgment ordering her to repay millions of dollars in legal fees

and trust disbursements. A series of departures from the applicable standards of care by each of

1

the defendants culminated in and was the proximate cause of a court-ordered forfeiture by Betty of her entire beneficial interests in the Elizabeth M. Tamposi GST Exempt Trust and the Elizabeth M. Tamposi Trust (collectively, "EMT Trust"), an order that she disgorge all distributions made to her from the EMT Trust for the period commencing in October, 2007, and an order compelling her to pay, jointly and severally with defendant Julie Shelton, the legal fees incurred by the respondents and intervenors in a prior action.

## Parties

1.   Plaintiff Elizabeth A. Tamposi (Betty) is an adult natural person and citizen of New Hampshire. Prior to the malpractice and breach of fiduciary duty committed against her, as more fully set forth below, she was a beneficiary of the EMT Trust created under the estate plan and amendments thereto of her father, Samuel A. Tamposi Sr., as more fully set forth below.

2.   Defendant Stephanie Denby (Denby) is an attorney residing, upon information and belief, in Illinois and duly licensed to practice law in Illinois, with a business address of 330 N. Wabash Avenue, Chicago, Illinois.

3.   Defendant Burke Warren Mackay & Serritella, P.C ( Burke Warren) is, upon information and belief, an Illinois professional corporation engaged in the practice of law, with a main place of business at 330 N. Wabash Avenue, Chicago, Illinois.

4.   At all times relevant hereto, upon information and belief Denby was a partner at Burke Warren, and all claims asserted herein against Denby also are asserted vicariously against Burke Warren.

5.   Defendant Michael Weisman (Weisman) is an attorney duly licensed to practice law in Massachusetts, and, upon information and belief resides at 31 Barberry Road, Lexington, Massachusetts.

6.  Defendant Rebecca McIntyre (McIntyre) is an attorney duly licensed to practice law in Massachusetts, and resides at 12 Norman Street, Cambridge, Massachusetts.

7.  Defendant Weisman & McIntyre, P.C. (W&M) is a Massachusetts professional corporation under which Weisman and McIntyre rendered advice and services to Betty as more fully set forth below. Notwithstanding the corporate entity, pursuant to Massachusetts Supreme Judicial Court Rule 3:06, both Weisman and McIntyre are fully liable for Betty's damages caused by his/her own negligent or wrongful act, error or omission, and liable for such damages subject to a cap for the vicarious negligence of the other.

8.  Defendant Julie Shelton, Esq. (Shelton) is an attorney residing, upon information and belief,  in Illinois and duly licensed to practice law in Illinois, with a current business address of 311 South Wacker Drive, Chicago, Illinois.

9.  Defendant Butler Rubin Saltarelli & Boyd, LLP (Butler Rubin) is a limited liability partnership engaged in the practice of law formed, upon information and belief, under the laws of the State of Illinois, with a principle office at 70 West Madison Street, Chicago, Illinois.

10.  Defendant Baker & Daniels, LLP (Baker) is, upon information and belief, a limited liability partnership engaged in the practice of law formed  under the laws of the State of Indiana with offices in Indiana, 311 South Wacker Drive in Chicago, Illinois and elsewhere.

11.  During the period of time relevant to allegations set forth herein, Shelton was first employed by or a partner of Butler Rubin, and then was employed by or a partner of Baker. All claims asserted herein against Shelton also are asserted vicariously against Butler Rubin and against Baker as appropriate.

## Jurisdiction

12.  Jurisdiction and venue are based upon diversity of citizenship as conferred by 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.  Plaintiff  Betty is a New Hampshire resident.  Defendants Weisman, McIntyre and W&M are Massachusetts residents. Upon information and belief Denby, Burke Warren, Shelton and Butler Rubin are Illinois residents. Upon information and belief Baker is resident in Illinois and/or Indiana. The defendants all have sufficient minimum contacts with the Commonwealth of Massachusetts in that they collectively invoked the jurisdiction of the courts of Massachusetts  by filing or aiding and abetting in the filing of the civil action known as <u>Julie Shelton, Trustee, et al. v. Tamposi, LLC et al.</u>, Suffolk Superior Court Civil Action No. 07-4283 (the Suffolk Action). The breach of fiduciary duty and malpractice of the defendants in filing and prosecuting or aiding and abetting in the filing and prosecuting of the Suffolk Action, together with, two weeks later, filing and prosecuting or aiding and abetting in the filing and prosecuting in Hillsborough County, New Hampshire Probate Court an equity action known as <u>Julie Shelton, Trustee, et al. v. Samuel A. Tamposi, Jr., et al.</u>, Case No. 316-2007-EQ-2109 (the New Hampshire Action) collectively led directly to the damages alleged herein.

## Factual Background

13.  Betty's father, Samuel A. Tamposi, Sr. ("Sam, Sr.") was a prominent real estate developer in Southern New Hampshire.  He had six children including Sam, Jr., Michael, Betty, Nicholas, Celina and Stephen.  As part of Sam, Sr.'s estate plan he established the Samuel A. Tamposi, Sr. 1992 Trust (the "SAT, Sr. Trust") under the laws of New Hampshire.  The Trust was designed to confer lifetime benefit to Sam, Sr. during his lifetime and his children and their issue after his death.  He made himself the initial Trustee. At Sam Sr.'s death in May, 1995, the

Trust assets had a value of approximately $20,000,000.00. At the time Betty's beneficial interests were forfeited, the Trust assets had grown to approximately $146,000,000.00 in value. At all times relevant hereto the Trust assets consisted predominantly of undivided and minority interests in business entities, real estate companies and tenancies in real estate. In short, they were illiquid.

14. Sam, Sr. amended the SAT, Sr. Trust several times. The SAT, Sr. Trust as amended specified that after Sam, Sr.'s death the Trust corpus was to be divided into 12 separate trusts for his children and their issue. Each child and his/her issue are beneficiaries of a trust containing assets exempt from the federal generation skipping transfer tax ("GST Exempt Trust"), and each child and his/her issue are beneficiaries of a trust having assets that are not exempt ("Non-Exempt Trust"). Each of the 12 trusts constitutes a separate and distinct trust but may be combined and comingled with the other trusts in a common fund for convenience and administration. Thus, while legal title to trust property was held in the name of the SAT, Sr. Trust, equitable title rests with the individual trust. Thus, under the SAT, Sr. Trust Betty was a beneficiary of the Elizabeth M. Tamposi GST Exempt Trust and the Elizabeth M. Tamposi Trust ("EMT Trust").

15. Also, the trust amendments made Sam, Jr. and Stephen or the survivor of them, "investment directors" when Sam, Sr. himself was no longer Trustee, named a successor Trustee, and prohibited the Trustee from transferring any interest in the Boston Red Sox, a Trust asset, without written approval of the American League of Professional Baseball Clubs. Sam, Sr. specifically instructed the Trustee to follow the directions and decisions of the investment directors regarding investments, purchases, sales, real estate interest and operating entities. Furthermore, Sam, Sr. only demanded of the investment directors that they exercise "good faith

and ordinary diligence" which is a different and less stringent standard of fiduciary care that required of a trustee pursuant to prudent investment standards of New Hampshire statutory law.

16. Betty's continued rights as a beneficiary under the EMT Trust were circumscribed by an *in terrorem* or "no contest" clause in the SAT, Sr. Trust.  That clause in pertinent part specifies as follows:

> **If any person shall at any time commence or join in the prosecution of any proceedings in any court or tribunal … to have … this Trust … set aside or declared invalid or to contest any part or all of the provisions included in … this Trust … or to cause or to induce any other person to do so, then and in that event such person shall thereupon forfeit any and all right, title and interest in or to any portion of this Trust, and this Trust shall be distributed in the same manner as would have occurred had such person died prior to the date of execution of this Trust …**

The *in terrorem* clause also provides in pertinent part that:

> **Nothing contained in this article, however, shall conclude any beneficiary from enforcing, by litigation or otherwise … the Trustee's duties under this or any other trust.**

17.  It was clear to any competent fiduciary and to the average qualified practitioner of probate law that Sam Sr.'s intent as settlor of the Trust, *inter alia*, was to maintain a centralized, unified management of the family business interests, and that he intended to keep the Tamposi family business interests intact after his passing by investing completely in his sons, Sam, Jr. and Stephen all authority and responsibility for the investment and management of the Trust assets, leaving to the Trustee of the individual trusts determination of the needs of the beneficiaries and distribution of appropriate funds to them in accordance with the applicable ascertainable standard under the Trust documents and New Hampshire law. The *in terrorem clause* was designed in large part to enforce Sam, Sr.'s intent, as all of the defendants knew or should have known.

18. There had been substantial discord within the Tamposi family after the death of Sam, Sr.  The subjects of this discord have been the parties' different views as to the proper relation

between the investment directors and the Trustee.  In 2006, litigation between the siblings over this discord was concluded with a Settlement Agreement that provided in pertinent part that Betty would have the right to obtain a trustee of her choosing with respect to the EMT Trust.

19.  Betty began to discuss with Shelton, a Chicago lawyer she had known for years, the need for a new Trustee for the EMT Trust. Shelton had no prior experience in trust administration and limited knowledge of the subject.

20.  Shelton introduced Betty to her friend Denby, an experienced practitioner of probate law in Chicago. Upon information and belief, Denby had no expertise and no significant prior experience with New Hampshire probate law.

21.  Denby declined to accept appointment as Trustee of the EMT Trust. Denby and Shelton then tried and failed to interest several Chicago-area experienced trustees in the role of Trustee for the EMT Trust.

22. Although Denby was unwilling to serve in the role of Trustee, and although Shelton had zero experience with trust administration, Denby formulated a plan whereby she (Denby) would act as de-facto Trustee while Shelton would nominally fill that role.  On or about August 10, 2007, Shelton went along with Denby's plan and accepted appointment as Trustee of the EMT Trust. Thus, from the beginning, Shelton abdicated to Denby her own duties to the beneficiaries, without legal authority, and with full acquiescence of Denby

23.  In furtherance of Denby's plan, she agreed on behalf of Burke Warren and herself to "represent (Betty) in conjunction with administration of (her) family trusts". A true and accurate copy of the May 22, 2007 engagement letter is attached hereto as "A" and incorporated by reference herein. That engagement letter expressly envisions litigation, even though a binding Settlement Agreement that foreclosed all litigation about prior events had been executed by the

siblings. At or about the same time, Denby entered into an agreement with Shelton to provide legal services Shelton in Shelton's capacity as Betty's Trustee.

24.  In executing the May 22, 2007 engagement letter, Denby held herself and Burke Warren out as adhering to the highest standard of care.

25.  Denby and Burke Warren immediately embarked on an irreconcilable course of conflicted interests in simultaneously representing Betty and Shelton, who had differing and conflicting legal interests, and they fomented litigation by Shelton and Betty ( the Suffolk Action and the New Hampshire Action) that was doomed to complete failure from the outset and much worse, unreasonably exposed Betty to forfeiture of her beneficial EMT Trust interests and huge additional damages. Denby and Burke Warren embarked on this course of action without the required thorough analysis of the legal positions of the parties, the risks and benefits of going forward with such course of action, and without rendering careful explanation to Betty of such legal positions, risks and benefits.  When Shelton eventually accepted her appointment on or about August 10, 2007 as Trustee of the EMT Trust, she did so in reliance upon the fact that Denby would guide her every move, as Denby and Burke Warren knew.

26. When Betty agreed to follow the plan concocted by Denby and Shelton, she did so in reasonable reliance on: 1) their representations that Denby was an expert in such matters; 2) their statements that they should and could in fact try to force the liquidation of the Tamposi family assets and/or "decouple" the assets of the EMT Trust from the overall Tamposi family assets; 3) their representations that because they would set up the litigation in the overall form of breach of fiduciary duty actions, Betty faced only a miniscule risk of being found in violation of the *in terrorem* clause. All of these representations were false and were caused by the inadequate

investigation into the applicable facts and legal standards at issue. Weisman and McIntyre rendered similar inadequate investigation and advice before filing suit.

27.  Nevertheless, Denby and Shelton pressed on, and found their man in Weisman. Neither Denby, Shelton nor Weisman had secured the services of any expert witness to advise them as to the risks and benefits of going forward with the litigation proposed by Denby, and they rendered no competent advice to Betty as to the risks and benefits of going forward, in large part because they failed to educate themselves as to such risks and benefits. Shelton has already admitted that she did not conduct any cost benefit analysis to determine whether the proposed litigation would benefit the beneficiaries.

28.  In particular, the defendants failed to acquaint themselves with the seminal New Hampshire case of <u>Burtman v. Butman</u>, 97 N.H. 254 (1952) as to the applicability of the *in terrorem* clause and its relationship to the settlor's intent, and failed to give any consideration to bringing either of the actions as a petition for instructions, both of which the average qualified practitioner would have done.  In either case, suit would not have been filed, and the damages to Betty would not have occurred

29.  Both Betty and Shelton entered into separate fee agreements with Weisman and W&M for the proposed litigation that required payment of a reduced hourly fee and a percentage of any "gross amount recovered".

30.  Denby had laid the groundwork for the litigation (in which her firm, Shelton's firm and Weisman's firm would lay claim to over $2,000,000 in undeserved legal fees) by having Shelton send a letter dated September 7, 2007, to the investment directors demanding that they provide her with $2,000,000 within 7 days for the immediate cash needs of the EMT Trust beneficiaries.  At the time the letter was sent as all the defendants were well aware, Shelton had

not taken possession of nor had she reviewed and determined the estimated worth of the trust assets.  She also had not taken into account the other income and resources of the beneficiaries at that time as was required by the ascertainable standard of the EMT Trust and GST Exempt Trust.

31.  Denby and Shelton knew full well this demand would be denied without any breach of duty by the investment directors, and it was denied.  Three weeks later, on September 28, 2007, they and Weisman sued the investment directors (Suffolk Action), and followed that up two weeks later by filing the New Hampshire Action.

32.  Both the Suffolk and New Hampshire actions blatantly attempt to skirt the testamentary objectives of Sam, Sr. under the thin disguise of breach of fiduciary duty claims. By Shelton's admission, at no time did she ever have evidence that Sam, Jr. and Stephen as investment directors had committed any mismanagement of the EMT Trust assets, and, neither did Denby or Weisman.

33. The Suffolk litigation instigated by Denby and brought at her behest by Shelton and Weisman, without prior evaluation by Weisman of the risk to Betty of going forward, caused the investment directors great embarrassment and legal expense, and almost caused collapse of delicate negotiations to sell the entire Tamposi family interest in the Boston Red Sox. With mounting legal expenses in the New Hampshire litigation as well, the investment directors brought to bear against Betty the power of the *in terrorem* clause, by a motion filed in January 2008.

34.  Even upon filing of the *in terrorem motion*, the defendants continued to fail to render reasonable advice Betty, and instead pressed on with the actions as their fees mounted and were paid by Shelton out of trust assets, with no reasonable inquiry or investigation by Shelton.

35.   On the eve of trial in the New Hampshire action, Betty was advised by Sam Tamposi, Jr. that she was in serious trouble with the *in terrorem* clause, but that in exchange for payment of $800,000.00 and dismissal of the action, the investment directors and intervenors would drop the *in terrorem* claim and Betty could keep her beneficial interests. Betty dutifully reported this to the defendants, who again told her falsely that she had no significant exposure on the *in terrorem* issue, and advised that she press on with the case.

36.   By order dated August 18, 2010 supported by fifty-four pages of findings of fact and legal rulings New Hampshire Probate Judge Gary R. Cassavechia determined, *inter alia*, that:

> This action contests several provisions of the trust, including, among others: the role of the investment directors…; authority of investment directors to retain assets in common with other siblings…; and their right to retain substantial assets as or in real estate…(references to trust provisions omitted)….   The court finds that in bringing and prosecuting this litigation the petitioners [Shelton and Elizabeth Tamposi] have acted in bad faith…It was clearly the intent of Sam, Sr. in devising his trust strategy, that the Tamposi family business would continue; that the trust assets would be managed and invested together; that his children would be treated equally; and that family bonds would be cemented as a result. In this litigation, the petitioners aspire to defeat these purposes by disengaging the interests of Betty and her issue from the train, taking it down an independent track where they will be free to choose their own destination and route for getting there.

Judge Cassavechia then carefully summarized the compelling evidence that the aim of the Complaint in the New Hampshire Action was to disregard the intent of Sam, Sr., as the defendants knew or should have known, as the average qualified practitioner, let alone a proclaimed expert such as Denby, should have so advised Betty.

37. The October 2007 New Hampshire Complaint filed in concert by the defendants reveals that it was at its core a direct attack on the intent of the trust settlor, Sam, Sr., with a scant window-dressing of "breach of fiduciary duty," on the extremely high-risk/low reward theory that the saving provision of the *in terrorem* clause[1] would provide safe harbor. The average

---

[1]      See Paragraph 16, supra.

qualified practitioner would have seen that the Complaint was economic suicide for Betty, and would have so advised her. Had Betty been rendered standard legal advice, she would not have participated in either action.

38.  In its stunningly unsupportable assertions that the investment directors owed a responsibility to Betty to decouple Betty's interests in the family trust assets from those of her siblings, to the prayers for relief (*e.g.*, removal of the investment directors, liquidation of trust assets) that if granted would be unmistakable violations of the trust settlor's intent, the Complaint was doomed from the start, the *in terrorem* clause was activated, and Betty's EMT Trust interests were lost forever.

39. Shelton, both as a trustee with fiduciary duties and as an attorney subject to a duty of due care, and the other defendants should have, and the average qualified practitioner would have, refrained from instituting either of the actions, without first giving due consideration to the potentially devastating defenses presented by the *in terrorem* clause of the Samuel A. Tamposi, Sr. 1992 Trust, and rendering a formal opinion to Betty as to the risks and benefits of going forward with the litigation that in essence sought "decoupling," that is, a separation of Betty's interests from those of her five siblings, all of whom were beneficiaries of similar trusts.  Had they done so, Betty would not have participated in either of the actions.

40.  Moreover, there was a better, safer way, more economically way to air any perceived grievances against the investment directors. As stated by Judge Cassavechia:

> **Had the petitioners sincerely believed that the trustee had power to require liquidation of trust assets and demand distributions, they would have petitioned the court for instructions pursuant to RSA 564-B:201(c), with enhanced, if not avoidant, prospect of not implicating the *in terrorem* clause. *The petitioners, one of whom is herself an attorney, would have been better advised to vet any genuine concern they had through the less contentious proceeding for an instruction. See e.g. In re Pack Monadnock*, 147 N.H. 419 (2002). (emphasis added).**

41. Upon finding that Betty violated the *in terrorem* clause, Judge Cassavechia then ordered, in pertinent part, that Betty "thereby forfeits all of her right, title and interest in or under [the Sam, Sr. Trust]"; that Betty shall not receive any distributions from the EMT Trust; that Betty shall reimburse the EMT Trust for all distributions received by her retroactive to the date of filing the original New Hampshire Complaint; and that Betty and Shelton would be liable to the respondents and intervenors for legal fees and costs.  Had Shelton adhered to her fiduciary duties or if Denby and Weisman had adhered to the applicable standard of care, Betty would have suffered none of these damages

## Count I: Legal Malpractice – Denby, Burke Warren

42.  Plaintiff hereby reasserts all allegations of Paragraphs 1-41 above as if fully set forth again herein.

43.  At all times relevant hereto there were attorney-client relationships between Betty and Denby, and between Betty and Burke Warren.

44.  Denby and Burke Warren owed Betty a duty to exercise reasonable care and ordinary skill and knowledge in providing the legal services agreed upon, and/or a duty to use the skill, care and diligence of the ordinary qualified practitioner of probate law.

45.  Denby and Burke Warren breached their duties of care owed to Betty as set forth above and as will be more fully set forth at trial.

46. These breaches of duty by Denby and Burke Warren proximately caused damage to Betty, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

13

WHEREFORE, Betty demands judgment against Denby and Burke Warren jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count II: Legal Malpractice-Heightened Standard of Care – Denby, Burke Warren

47. Plaintiff hereby reasserts all allegations of Paragraphs 1-46 above as if fully set forth again herein.

48.  At all times relevant hereto there were attorney-client relationships between Betty and Denby, and between Betty and Burke Warren.

49.  Denby and Burke Warren held themselves out to Betty as providers of "the highest quality legal of services", and as such owed Betty a duty to use the skill, care and diligence of the best practitioner of probate law.

50.  Denby and Burke Warren breached their heightened duties of care owed to Betty as set forth above and as will be more fully set forth at trial.

51.  These breaches of duty by Denby and Burke Warren proximately caused damage to Betty, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Denby and Burke Warren jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

**Count III: Aiding and Abetting Breach of Fiduciary Duty - Denby and Burke Warren**

52.  Plaintiff hereby reasserts all allegations of Paragraphs 1-51 above as if fully set forth again herein.

53. Shelton as Trustee of the EMT Trust breached her fiduciary duty to the trust beneficiaries as set forth above, as found by Judge Cassavechia, and as will be more fully proven at trial, and Betty was injured thereby.

54.  Denby, and Burke Warren vicariously, knowingly and substantially rendered assistance to Shelton in the commission of her breach of fiduciary duties, as set forth above and as will be more fully set forth at trial, and they were aware of their role in Shelton's wrongful acts.

55.  Betty suffered damages as a proximate result of the aiding and abetting by Denby and Burke Warren of Shelton's breaches of fiduciary duty, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Denby and Burke Warren jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

**Count IV:  Conflict of Interest- Denby, Burke Warren**

56.  Plaintiff hereby reasserts all allegations of Paragraphs 1-55 above as if fully set forth again herein.

57.  At all times relevant hereto Denby and Burke Warren owed Betty a duty to provide legal advice and services with the utmost fidelity free of any conflicts of interest.

58.  In simultaneously representing Betty and Shelton, whose interests were not aligned, Denby and Burke Warren provided Betty only with conflicted legal advice and services, and denied Betty the opportunity to have independent, sound legal advice around all of the important legal issues in the drama of the Tamposi family business.

59.  Betty suffered damages as a proximate result of  Denby's and Burke Warren's conflicts of interest, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Denby and Burke Warren jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count V:  Legal Malpractice- Weisman, McIntyre, W&M

60.  Plaintiff hereby reasserts all allegations of Paragraphs 1-60 above as if fully set forth again herein.

61.  At all times relevant hereto there were attorney-client relationships between Betty and Weisman, McIntyre, and W & M.

62.  Weisman, McIntyre, and W & M owed Betty a duty to exercise reasonable care and ordinary skill and knowledge in providing the legal services agreed upon, and/or a duty to use the skill, care and diligence of the ordinary qualified practitioner of probate litigation.

63.  Weisman, McIntyre, and W & M breached their duties of care owed to Betty as set forth above and as will be more fully set forth at trial.

64.  These breaches of duty by Weisman, McIntyre, and W & M proximately caused damage to Betty, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Weisman, McIntyre, and W & M jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count VI:  Aiding and Abetting Breach of Fiduciary Duty- Weisman, McIntyre, W&M

65.  Plaintiff hereby reasserts all allegations of Paragraphs 1-64 above as if fully set forth again herein.

66.  Shelton as Trustee of the EMT Trust breached her fiduciary duty to the trust beneficiaries as set forth above, as found by Judge Cassavechia, and as will be more fully proven at trial, and Betty was injured thereby.

67.  Weisman, McIntyre, and W & M vicariously, knowingly and substantially rendered assistance to Shelton in the commission of her breach of fiduciary duties, as set forth above and as will be more fully set forth at trial, and they were aware of their role in Shelton's wrongful acts.

68.  Betty suffered damages as a proximate result of the aiding and abetting by Weisman, McIntyre, and W & M of Shelton's breaches of fiduciary duty, including but not limited to

forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Weisman, McIntyre, and W & M jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count VII:  Conflict of Interest-  Weisman, McIntyre, and W & M

69.  Plaintiff hereby reasserts all allegations of Paragraphs 1-68 above as if fully set forth again herein.

70.  At all times relevant hereto Weisman, McIntyre, and W & M owed Betty a duty to provide legal advice and services with the utmost fidelity free of any conflicts of interest.

71.  In simultaneously representing Betty and Shelton, whose interests were not aligned, Weisman, McIntyre, and W & M provided Betty only with conflicted legal advice and services, and denied Betty the opportunity to have independent, sound legal advice around all of the important legal issues in the drama of the Tamposi family business.

72.  Betty suffered damages as a proximate result of Weisman's, McIntyre's, and W & M's conflicts of interest, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Weisman, McIntyre, and W & M jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count VIII:  Breach of Fiduciary Duty- Shelton, Butler Rubin, Baker

73.   Plaintiff hereby reasserts all allegations of Paragraphs 1-72 above as if fully set forth again herein.

74.   Shelton, and at least vicariously Butler Rubin and Baker, owed trustee fiduciary duties to Betty and others under New Hampshire law.

75.   As found by Judge Cassavechia, and as will be more fully set forth at trial, Shelton, Butler Rubin and Baker violated their fiduciary duties to Betty and others, which caused Judge Cassavechia to remove Shelton as Trustee of the EMT Trust.

76.   Shelton, Butler Rubin and Baker in fact abdicated their fiduciary duties and instead allowed themselves to be controlled by Denby, and convinced by her to embark on a litigation plan that had no purpose other than to make enormous amounts of money for all of the defendants at the expense of the trust corpus that Shelton was charged to conserve.

77.   Betty suffered damages as a proximate result of the breaches of fiduciary duty by Shelton, Butler Rubin and Baker, including but not limited to forfeiture of her future income stream from the EST Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Shelton, Butler Rubin and Baker jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

### Count V:  Legal Malpractice- Shelton, Butler Rubin, Baker

78.  Plaintiff hereby reasserts all allegations of Paragraphs 1-77 above as if fully set forth again herein. At all times relevant hereto there was an attorney-client relationship between Betty and Shelton, and at times relevant hereto there were attorney-client relationships between Betty and Butler Rubin, and between Betty and Baker.

79.  Shelton, Butler Rubin and Baker owed Betty a duty to exercise reasonable care and ordinary skill and knowledge in providing the legal services agreed upon, and/or a duty to use the skill, care and diligence of the ordinary qualified practitioner of probate litigation.

80.  Shelton, Butler Rubin and Baker breached their duties of care owed to Betty as set forth above and as will be more fully set forth at trial.

81.  These breaches of duty by Shelton, Butler Rubin and Baker proximately caused damage to Betty, including but not limited to forfeiture of her future income stream from the EMT Trust, payment of millions in legal fees to the investment directors, and reimbursement of millions of dollars to the EMT Trust, along with such additional damages as will be proven at trial.

WHEREFORE, Betty demands judgment against Shelton, Butler Rubin and Baker jointly and severally in an amount to be proven at trial, together with applicable interest and costs, and all such further relief as is just.

## Count IX:  Unjust Enrichment- All Defendants

82.  Plaintiff hereby reasserts all allegations of Paragraphs 1-81 above as if fully set forth again herein.

83.  Defendants acquired substantial fees as a result of their negligence and misrepresentations as set forth above and as will be more fully set forth at trial, under circumstances that would render it unjust for them to keep those fees.

WHEREFORE, Betty demands imposition of a constructive trust upon each defendant in the amount of all fees received by that defendant in connection with the Suffolk Action and the New Hampshire Action.

## Trial By Jury

A jury trial is demanded on all claims so triable.

## Verification

I, Elizabeth M. Tamposi, hereby verify and swear under the penalties of perjury that the factual assertions set forth hereinabove in this Verified Complaint are true according to my own personal knowledge except where stated upon information and belief, in which instance said factual assertions are true according to the best of my information and life.

/s/ Elizabeth M. Tamposi

_____

Dated: December 31, 2010                 By her Attorney:

 /s/Charles P. Kazarian, Esq.

_____

Law Offices of Charles P. Kazarian
160 State Street, Sixth Floor
Boston, MA 02109
617 723-6676

21

cpk@kazarianlaw.com
BBO No. 262600